**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Jolene Anderson, Candace Johnson, Kedra James, and Marrero Tenants Organization, Inc., | |
| Plaintiffs, | Civil Action No. 1:23-cv-01259-DLF |
| v. | |
| United States Department of Housing and Urban Development and Marcia L. Fudge, Secretary of the Department of Housing and Urban Development, in her official capacity, | |
| Defendants. | |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 3

    I.      Defendants' Standing Argument Is Meritless. ................................... 3

    II.    Plaintiffs Demonstrated Likelihood of Success on the Merits. ....... 6

          A.    1437t(b)(3) Does Not Authorize HUD's Waiver of the Conversion Assessment. ............................................................ 6

          B.    HUD Does Not Dispute the 2019 Notice Was a Change in Position. .... 9

               1.    HUD's Change in Position Required Notice and Comment. ................................................................. 9

               2.    HUD's Change in Position Was Arbitrary and Capricious. ................................................................ 14

          C.    Waiver of the Conversion Assessment Is Inconsistent with Defendants' Duty to Affirmatively Further Fair Housing. ................ 15

               1.    The Notice's Waiver Does Not Accord with Defendants' Duty to Affirmatively Further Fair Housing. ........................... 15

               2.    Approval of the Conversion Plan's Resulting Segregative Effects and Disparate Treatment Breached Defendants' Obligations Under the Fair Housing Act. ........... 18

    III.    Plaintiffs Have Established Irreparable Harm. ............................... 19

    IV.    The Balance of Equities and Public Interest Favor Entry of a Preliminary Injunction. ......................................................................... 21

CONCLUSION .................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adirondack Med. Ctr. v. Sebelius*, 740 F.3d 692 (D.C. Cir. 2014)..................................7

*Allen v. N.Y.C. Hous. Auth.*, No. 10 Civ. 168(CM) (DCF), 2010 WL 1644956
(S.D.N.Y. Apr. 20, 2010).....................................................................................20

*Am. Disabled for Attendant Programs Today v. HUD*, 170 F.3d 381 (3d Cir.
1999) ................................................................................................................9

*Amiri v. Gelman Mgmt. Co.*, No. CV 08-1864 (JDB), 2010 WL 11575469
(D.D.C. Feb. 18, 2010) .......................................................................................20

*Animal Legal Def. Fund, Inc. v. Glickman*, 154 F.3d 426 (D.C. Cir. 1998)..................4

*Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441 (1915)..................12, 13

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988) ...........................................12

*Boykin v. Gray*, 895 F. Supp. 2d 199 (D.D.C. 2012)....................................................17

*Brendsel v. Office of Fed. Hous. Enter. Oversight*, 339 F. Supp. 2d 52 (D.D.C.
2004) ...........................................................................................................11, 12

*Brown v. Artery Org., Inc.*, 654 F. Supp. 1106 (D.D.C. 1987).................................19, 22

*Cherokee Nation v. U.S. Dep't of the Interior*, No. 20-2167 (TJK), 2022 WL
17177622 (D.D.C. Nov. 23, 2022).........................................................................6

*Conf. Grp., LLC v. F.C.C.*, 720 F.3d 957 (D.C. Cir. 2013) ...........................................13

*Ctr. for Biological Diversity v. McAleenan*, 404 F. Supp. 3d 218 (D.D.C. 2019)........11

*Defs. of Wildlife v. Chertoff*, 527 F. Supp. 2d 119 (D.D.C. 2007)................................11

*Drake v. F.A.A.*, 291 F.3d 59 (D.C. Cir. 2002) .............................................................9

*F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009).......................................15

*Freedom Republicans, Inc. v. FEC*, 13 F.3d 412 (D.C. Cir. 1994) ................................4

*Gulf Coast Mar. Supply, Inc. v. United States,* 218 F. Supp. 3d 92 (D.D.C. 2016),
*aff'd*, 867 F.3d 123 (D.C. Cir. 2017) .....................................................................23

*Heckler v. Chaney*, 470 U.S. 821 (1985) ......................................................................9

*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977) ...............................6

*Ipsen Biopharmaceuticals, Inc. v. Becerra*, No. 22-CV-860 (DLF), 2023 WL 3319366 (D.D.C. May 8, 2023) ................................................................3, 4, 5

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ........................................3, 5

*Mack Trucks, Inc. v. E.P.A.*, 682 F.3d 87 (D.C. Cir. 2012) .........................10

*Mendoza v. Perez*, 754 F.3d 1002 (D.C. Cir. 2014) ................................3, 5

*Mhany Mgmt. Inc. v. City of Nassau*, 819 F.3d 581 (2d Cir. 2016)..............19

*Moore v. Cap. Realty Grp., Inc.*, 21-CV-1099-LJV, 2022 WL 2352554 (W.D.N.Y. June 30, 2022) ...............................................................20

*Nat'l Family Planning & Reprod. Health Ass'n v. Sullivan*, 979 F.2d 227 (D.C. Cir. 2019) ............................................................................10

*Oliva v. Brookwood Coram I, LLC*, No. CV 14-cv-2513 (JMA)(AYS), 2015 WL 13745439 (E.D.N.Y. Nov. 30, 2015) ..............................................20

*Otero v. N.Y.C. Hous. Auth.*, 484 F.2d 1122 (2d Cir. 1973) ......................16

*Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150 (9th Cir. 2011) ...........................................................................19

*Physicians for Soc. Resp. v. Wheeler*, 956 F.3d 634 (D.C. Cir. 2020) ........8, 9

*Safari Club Int'l v. Zinke*, 878 F.3d 316 (D.C. Cir. 2017)....................12, 13

*Samma v. Dep't of Def.*, 486 F. Supp. 3d 240 (D.D.C. 2020) .................11, 12

*Shannon v. HUD*, 436 F.2d 809 (3d Cir. 1970) ...................................16, 17

*Steinhorst Assocs. v. Preston*, 572 F. Supp. 2d 112 (D.D.C. 2008)..............10

*Teva Pharms. USA, Inc. v. FDA*, 514 F. Supp. 3d 66 (D.D.C. 2020)..............5

*Thompson v. HUD*, 348 F. Supp. 2d 398 (D. Md. 2004)............................16

*Toth v. Wells Fargo Bank, N.A.*, 82 F. Supp. 3d 373 (D.D.C. 2015)..............20

*United Food and Comm. Workers Union Loc. 751 v. Brown Grp. Inc.*, 517 U.S. 544 (1996)..............................................................................7

*United States v. Seventeen Thousand Nine Hundred Dollars ($17,900.00) in United States Currency*, 859 F.3d 1085 (D.C. Cir. 2017) ......................5

*Verizon v. F.C.C.*, 740 F.3d 623 (D.C. Cir. 2014) ...................................15

*Weingarten v. Devos*, 468 F. Supp. 3d 322 (D.D.C. 2020)..........................................................5

*WildEarth Guardians v. Jewell*, 738 F.3d 298 (D.C. Cir. 2013) ...................................................4

*N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759 (1969)...............................................................12

*Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442 (9th Cir. 1994)....................................10

*Younger v. Harris*, 401 U.S. 37 (1971).......................................................................................20

**Statutes**

5 U.S.C. § 551 ...............................................................................................................................12

5 U.S.C. § 553 .........................................................................................................................10, 13

5 U.S.C. § 706 ...............................................................................................................1, 6, 9, 18

42 U.S.C. § 1437t ................................................................................................................. passim

42 U.S.C. § 3535 ...........................................................................................................................14

42 U.S.C. § 3608 .....................................................................................................................15, 16

42 U.S.C. § 13603 .........................................................................................................................11

42 U.S.C. § 13661 .........................................................................................................................11

**Other Authorities**

24 C.F.R. § 10.1 ............................................................................................................................11

24 C.F.R. § 100.500 .................................................................................................................18, 19

24 C.F.R. § 972 ...............................................................................................................................8

24 C.F.R. § 982.401 ......................................................................................................................21

Affirmatively Furthering Fair Housing, 80 Fed. Reg. 42,272 (Jul. 16, 2015)..............................16

Large Public Housing Authorities, *Public Housing Facts: How Much Public Housing Is There?*, https://clpha.org/public-housing/facts ......................................................13

PIH Notice 2014-14 (HA)..............................................................................................................14

PIH Notice 2019-05 (HA)......................................................................................................... passim

PIH Notice 2021-34 .......................................................................................................................14

Proposed Rule on Affirmatively Furthering Fair Housing, 88 Fed. Reg. 8,516
(Feb. 9, 2023).................................................................................................15, 16

Required Initial Assessments, 66 Fed. Reg. 33,616 (June 22, 2001) ............................................11

Restoring Affirmatively Furthering Fair Housing Definitions and Certifications,
86 Fed. Reg. 30,779, 30,781 (Jun. 10, 2021).................................................16, 17

Voluntary Conversions of Developments from Public Housing Stock, 64 Fed.
Reg. 40,240 (July 23, 1999)................................................................................11

Waiver of Regulations Issued by HUD Restatement of Policy, 73 Fed. Reg.
76,674 (Dec. 17, 2008) ......................................................................................14

## SUMMARY OF ARGUMENT

Plaintiffs Jolene Anderson, Candace Johnson, Kedra James, and the Marrero Tenants Organization, Inc. ("MTO"), established in their motion for a preliminary injunction that they are likely to succeed on the merits of their Administrative Procedure Act ("APA") claims against Defendants United States Department of Housing and Urban Development ("HUD") and Marcia L. Fudge, HUD Secretary, that they will be irreparably harmed if an injunction does not issue, and that the balance of equities and public interest favor the relief they seek. Defendants' response does not demonstrate otherwise.

Defendants' challenge to Plaintiffs' standing is without merit. Two of the individual Plaintiffs, Ms. Anderson and Ms. Johnson, face the impending threat of eviction and homelessness, and Ms. James was unable to use her Housing Choice Voucher ("HCV") to relocate anywhere other than somewhere more dangerous and more expensive. MTO's standing is derivative of the individual Plaintiffs' standing and is likewise established here. These injuries are traceable to Defendants' issuance of PIH Notice 2019-05 (HA) ("the Notice" or "2019 Notice") and approval of the Acre Road streamlined voluntary conversion ("SVC") pursuant to the Notice, and redressable by vacatur of the 2019 Notice and HUD's approval of the Acre Road SVC.

The plain language and statutory structure of 42 U.S.C. 1437t, and HUD's longstanding regulatory framework governing voluntary conversions of public housing authorities ("PHAs") make clear that Defendants' waiver of the conversion assessment in the 2019 Notice failed to accord with the law in violation of 5 U.S.C. § 706(2)(A) of the APA. The many statutory and regulatory references to the conversion assessment furnish judicially manageable standards to evaluate HUD's actions with respect to voluntary conversions that undercut Defendants' contention that its waiver by the 2019 Notice is unreviewable by this Court because it is an

1

exercise of discretion for which there is no law to apply. Defendants' arguments that notice and comment rulemaking was not required to issue the 2019 Notice, despite the regulations that the Notice now abridges having undergone notice and comment rulemaking, are likewise unavailing. Defendants' assertion that it need not engage in notice and comment rulemaking because § 1437t(b)(3) does not expressly require it is unsupported as a matter of law. Moreover, Defendants' waiver of the conversion assessment is not an adjudication within the meaning of the APA. Nor is it consistent with HUD's prior interpretations that § 1437t requires PHAs to conduct conversion assessments as part of voluntary conversions (a 2014 notice on which HUD relies reduced but did not eliminate the conversion assessment requirement). Finally, Defendants cannot defeat Plaintiffs' APA claims that they breached their Fair Housing Act ("FHA") mandate by asserting that the outcome of Acre Road SVC would not have changed even if a conversion assessment had been performed. The alleged interest in health and safety upon which Defendants rely does not excuse their failure to consider the fair housing implications of their actions and, in any event, could have been achieved through a less discriminatory alternative.

Without a preliminary injunction, Ms. Anderson and Ms. Johnson are at imminent risk of eviction and homelessness, because Defendants' approval of the Acre Road SVC authorizes the PHA to issue notices to vacate at any time. Ms. James has already suffered irreparable injury as a result of Defendants' actions by relocating to a more dangerous area with greater housing costs. Acre Road's attrition irreparably injures MTO's organizing and advocacy efforts. Contrary to Defendants' assertion, the balance of equities and the public interest weigh in favor of enjoining a conversion that will result in forced displacement and homelessness for Plaintiffs.

The Court should grant Plaintiffs' motion for a preliminary injunction.

**ARGUMENT**

## I.    Defendants' Standing Argument Is Meritless.

In their opening papers, Plaintiffs demonstrated they were injured as a result of Defendants' approval of the Acre Road SVC pursuant to the 2019 Notice that unlawfully waived the conversion assessment required by 42 U.S.C. § 1437t because they will be forced to relocate to housing that is more expensive, less safe, and in areas that are more racially segregated and higher concentrations of poverty than Acre Road. Pls.' Mem. at 28–31, 37–38. Plaintiffs' injuries will be redressed upon vacatur of the 2019 Notice and Defendants' approval of the Acre Road SVC application.

Constitutional standing contains three elements: "(1) the plaintiff must have suffered an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'; (2) there must exist 'a causal connection between the injury and the conduct complained of'; and (3) it must be "'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Ipsen Biopharmaceuticals, Inc. v. Becerra*, No. 22-CV-860 (DLF), 2023 WL 3319366, at *4 (D.D.C. May 8, 2023) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Plaintiffs have met all three elements.

First, Plaintiffs face a concrete and particularized injury because they are at imminent risk of eviction, or have already suffered displacement into expensive, substandard, segregated housing. See *infra* Section III; Pls.' Mem. at 36–39.  The pleaded injury suffices to challenge both the Notice and approval of the conversion plan because "the agency action[s] affect[] [Plaintiffs'] interests in a personal way." *Mendoza v. Perez*, 754 F.3d 1002, 1013 (D.C. Cir. 2014) (holding sheep herders whose wages were affected by Labor Department letters regulating foreign worker visas suffered injury-in-fact). Moreover, Plaintiffs' injury to their residence is a "concrete interest adversely affected by the procedural deprivation" caused by Defendants'

issuance of the Notice without notice and comment, and subsequent approval of the SVC in a manner that is arbitrary, capricious, and contrary to law. *WildEarth Guardians v. Jewell*, 738 F.3d 298, 305-06 (D.C. Cir. 2013) (holding aesthetic and recreational injuries suffered by environmentalists sufficed for standing to challenge deficient impact statement resulting in arbitrary and capricious land lease). Defendants do not and cannot contest these injuries.

Second, where, as here, concrete injury is established, the elements of traceability and redressability are readily met. To demonstrate traceability, plaintiffs need only show a "causal nexus between the agency action and the asserted injury." *Ipsen Biopharmaceuticals, Inc.,* 2023 WL 3319366, at *5 (quoting *Freedom Republicans, Inc. v. FEC*, 13 F.3d 412, 418 (D.C. Cir. 1994)); *see also Animal Legal Def. Fund, Inc. v. Glickman*, 154 F.3d 426, 439 (D.C. Cir. 1998) ("the proper comparison [for determining causation] is between what the agency *did* and what the plaintiffs allege the agency *should have done* under the statute" (emphasis added)).

Plaintiffs need not demonstrate their injury is traceable to the health and safety concerns that purportedly animated HUD's approval of the Acre Road conversion. *See* Defs.' Opp. at 17. Rather, the relevant causal connection here is between Defendants' approval of the Acre Road conversion pursuant to an unlawful Notice that waived a statutorily required conversion assessment and their injuries, which Plaintiffs have amply demonstrated. Defendants' action will force (and in one instance has forced) Plaintiffs to leave their community for housing that is more expensive and substandard than where they currently reside. Anderson Decl. (ECF 3-4) ¶¶ 7-10, 28-31; Johnson Decl. (ECF 3-5) ¶¶ 11-12, 18-21; James Decl. (ECF 3-6) ¶¶ 9, 18-19. Additionally, Plaintiffs allege the Acre Road SVC functionally confines Acre Road residents with vouchers to neighborhoods "with higher concentrations of Black and Latino residents, higher average levels of residents in poverty, or with low incomes, lower homeownership rates,

and higher unemployment rates as compared with Marrero," where Acre Road is located. Steil Decl. (ECF 3-3) ¶ 6; *see id.* ¶¶ 28-32. "These measures all have demonstrable negative effects on child development, health, and socio-economic mobility." *Id.* ¶ 32.  This element is established because Plaintiffs' imminent risk of eviction and forced relocation would "not have occurred but for" Defendants' waiver of the conversion assessment and issuance of the 2019 Notice. *Ipsen Biopharmaceuticals, Inc.*, 2023 WL 3319366, at *6.

Third, when adjudicating the further requirement that the injury be "likely . . . [to] be redressed by a favorable decision," *Weingarten v. Devos*, 468 F. Supp. 3d 322, 336 (D.D.C. 2020) (quoting *Lujan*, 504 U.S. at 560), the plaintiff "need only show that some of the relief requested would redress some of the injuries alleged." Vacatur of the Notice and Defendants' approval of the Acre Road SVC would redress Plaintiffs' risk of eviction and homelessness. *See Ipsen Biopharmaceuticals, Inc.*, 2023 WL 3319366, at *8. Although HUD may ultimately approve a lawful conversion of Acre Road due to health and safety concerns, *see* Defs.' Opp. at 17–20, "the clear ability of the requested [relief] to redress [Plaintiffs'] harms in the interim is not speculative simply because it may be short-lived." *Ipsen Biopharmaceuticals, Inc.*, 2023 WL 3319366, at *8 (quoting *Teva Pharms. USA, Inc. v. FDA*, 514 F. Supp. 3d 66, 91 (D.D.C. 2020)).

Defendants' argument that HUD's approval of the conversion plan would have occurred regardless of the conversion assessment—and therefore Plaintiffs' injuries would not be redressed by this action— "is substantially the same as arguing the omitted procedure would not have affected the agency's decision. This is precisely the argument a defendant cannot make." *Mendoza*, 754 F.3d at 1013. This is because Defendants' redressability argument impermissibly "conflate[s] the constitutional standing inquiry with the merits determination that comes later." *United States v. Seventeen Thousand Nine Hundred Dollars ($17,900.00) in United States*

*Currency*, 859 F.3d 1085, 1091 (D.C. Cir. 2017) (internal citation omitted); *Cherokee Nation v. U.S. Dep't of the Interior*, No. 20-2167 (TJK), 2022 WL 17177622, at *9 (D.D.C. Nov. 23, 2022) ("[c]ourt must assume that the plaintiff would prevail on the merits of their claim," and "assume the validity of the plaintiff's interpretation of statutes or regulations governing the claim." (internal citation omitted)). Defendants argue that Plaintiffs lack standing to challenge the Notice because the Secretary's waiver of the conversion assessment for SVC applications is pursuant to 42 U.S.C. § 1437t(b)(3). Defs.' Opp. at 20. But whether § 1437t(b)(3) authorizes the Notice's waiver of the conversion assessment is at the crux of Plaintiffs' APA claims and therefore, cannot defeat Plaintiffs' standing to challenge Defendants' actions. Accordingly, individual Plaintiffs and, in turn, MTO have standing to pursue their claims. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) (finding an association has standing where 1) its members have standing to sue in their own right, 2) it seeks to protect interests that are germane to its own purpose, and 3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit); *see* Collins Decl. (ECF 3-7), Exs. A–D (describing MTO's interests in Acre Road's conversion). The Acre Road SVC and accompanying eviction and displacement of the remaining residents will effectively dissolve MTO.

## II.    Plaintiffs Demonstrated Likelihood of Success on the Merits.

### A.    1437t(b)(3) Does Not Authorize HUD's Waiver of the Conversion Assessment.

In their opening brief, Plaintiffs established that the plain language of § 1437t and its implementing regulations require a PHA to conduct a conversion assessment, and the Notice's waiver of the requirement failed to accord with the law, in violation of section 706(2)(A) of the APA. Defendants do not and cannot credibly contend otherwise.

Defendants argue § 1437t(b)(3) authorizes the Secretary to waive the conversion assessment, and this poses "no conflict" with the express references to conversion assessments in § 1437t(c) and § 1437t(e)(1) and (e)(2). To reconcile these provisions, Defendants argue the latter provisions merely have "no application" when the Secretary has waived a conversion assessment, Defs.' Opp. at 33, a strained construction that requires setting aside the fundamental principle that an interpretation "which would give effect to all of [a statute's] provisions . . . always prevails over a mere suggestion to disregard or ignore duly enacted law . . . ." *United Food and Comm. Workers Union Loc. 751 v. Brown Grp. Inc.*, 517 U.S. 544, 550 (1996). Indeed, Plaintiffs' interpretation of § 1437t(b)(3) accords with § 1437t(b)(2), which makes clear the waiver provision applies only to the limited two-year period following the enactment of § 1437t when Congress ordered each PHA to evaluate their housing stock through a conversion assessment, a provision of the statute and historical context that Defendants' response ignores completely.

Defendants' reliance on the canon that the "specific" waiver provision of § 1437t(b)(3) controls over the "more general" § 1437t(c) and § 1437t(e), Defs.' Opp. at 33–34, is likewise misplaced. "The canon is impotent . . . unless the compared statutes are irreconcilably conflicting." *Adirondack Med. Ctr. v. Sebelius*, 740 F.3d 692, 698 (D.C. Cir. 2014) (internal citation omitted). That § 1437t(c) and § 1437t(e) do not address waiver of the conversion assessment does not render them in irreconcilable conflict with § 1437t(b)(3). Rather, § 1437t(c) imposes an obligation on PHAs to complete a conversion assessment before performing a voluntary conversion of their housing stock, while § 1437t(e) furnishes the limited grounds upon which the Secretary may disapprove a conversion plan. *See* Pls.' Mem. at 23–24. Plaintiffs'

interpretation of § 1437t(b)(3) is congruous with the entirety of the section and gives meaning to every word.

Defendants cannot waive the conversion assessment requirement without nullifying the numerous regulatory references to a conversion assessment as a component of a conversion plan. *See* Pls.' Mem. 14–15 (citing 24 C.F.R. § 972.209(a), § 972.224(a), § 972.230(b), § 972.230(c), § 972.230(f), § 972.239). Defendants' opposition does not challenge this argument. Indeed, Defendants wholly fail to address the incongruity of their interpretation of § 1437t(b)(3) with HUD's longstanding regulatory framework governing voluntary conversions of public housing.

Moreover, HUD's implementing regulations interpret the statute to require a conversion assessment as part of a conversion plan. *See* Pls.' Mem. at 25–26; *see also id.* at 19–21. HUD's longstanding interpretation is consistent with Congress's intent to give the Secretary authority to waive the initial assessments required of *all* PHAs within the first two years § 1437t was in place, but requiring a conversion assessment whenever an agency submitted a conversion plan. *See id*. Defendants' opposition is silent on this point.

Indeed, Defendants' argument that the "decision to approve the [Acre Road] application without a conversion assessment was left to its discretion by statute and, therefore, is not subject to review under the APA," Defs.' Opp. 22, is undermined by the statutory and regulatory references to the integral role of the conversion assessment in the Secretary's evaluation of a conversion plan under § 1437t(e). *See Physicians for Soc. Resp. v. Wheeler*, 956 F.3d 634, 643 (D.C. Cir. 2020) ("[J]udicially manageable standards may be found in formal and informal policy statements and regulations as well as in statutes." (internal quotations omitted)). There is a "very narrow exception" to the APA's "basic presumption of judicial review" where statutes are drawn so broadly that there is no "substantive legal criteria against which an agency's conduct

can be seriously evaluated." *Drake v. F.A.A.*, 291 F.3d 59, 70 (D.C. Cir. 2002) (internal citations omitted). However, HUD's decision to waive the conversion assessment for the Acre Road conversion is not such an exception.

The cases upon which Defendants rely offer no support for their position. They assert that an agency's decision not to exercise its prosecutorial powers cannot be challenged under the APA. *See Drake*, 291 F.3d at 70, *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *Am. Disabled for Attendant Programs Today v. HUD*, 170 F.3d 381, 389 (3d Cir. 1999). Such a decision is not before the Court. Importantly, Defendants' decision to waive the conversion assessment is not amongst the types of administrative agency actions that are presumptively non-reviewable. *Physicians for Soc. Resp.*, 956 F.3d at 642 (identifying allocations of lump sum appropriations, an agency's decision to settle, "the FAA's decision not to renew an aircraft examiner's authority,"  and a prosecutor's certification of a substantial federal interest in a case as presumptively non-reviewable agency actions).

Accordingly, Plaintiffs are likely to succeed on their claim that the Notice is contrary to law and must be set aside under section 706(2)(A) of the APA.

### B.      HUD Does Not Dispute the 2019 Notice Was a Change in Position.

#### 1.      HUD's Change in Position Required Notice and Comment.

Plaintiffs' opening papers established the Notice was a legislative rule unlawfully promulgated without notice and comment because it could not be reconciled with the agency's prior regulations, which were promulgated pursuant to notice and comment.  The Notice alters the agency's framework for analyzing a conversion plan, affects the substantive rights of PHAs and tenants, nullifies two statutory grounds for disapproval of conversion plans, and dictates the confounding result that the Secretary must disapprove every conversion plan she receives pursuant to the Notice because it will fail to meet the requirements of § 1437t. Pls.' Mem. at 14–

18. Such changes to the existing rules and the substantive rights of parties require notice and comment under the APA. *See Nat'l Family Planning & Reprod. Health Ass'n v. Sullivan*, 979 F.2d 227, 235 (D.C. Cir. 2019) (recognizing the "maxim of administrative law that: If a second rule repudiates or is irreconcilable with a prior legislative rule, the second rule must be an amendment of the first; and, of course, an amendment to a legislative rule must itself be legislative." (internal quotation omitted)).

Defendants dispute none of these points. Instead, they argue Congress did not intend for HUD to engage in notice and comment rulemaking when asserting its waiver authority under § 1437t(b)(3), and the Secretary's exercise of its waiver authority is an adjudication not subject to rulemaking. Defs.' Opp. at 34–36. Both of these arguments are unavailing.

First, Defendants cannot credibly contend the absence of express language requiring rulemaking in § 1437t(b)(3) means this Court should "presume[] that Congress intended for the Department to be able to exercise its waiver authority without promulgating regulations." Defs.' Opp. at 34–35. Courts presume notice and comment is necessary whenever an agency engages in rulemaking, subject to limited exceptions set forth in 5 U.S.C. § 553, which do not include a "waiver." *See Mack Trucks, Inc. v. E.P.A.*, 682 F.3d 87, 95 (D.C. Cir. 2012) (chastising agency for "suggesting that notice and comment is usually unnecessary"); *Steinhorst Assocs. v. Preston*, 572 F. Supp. 2d 112, 119 (D.D.C. 2008) (observing that courts do not defer to the agency's characterization of its own rule when determining if notice and comment is required).

In fact, at least one federal court has "decline[d] to read . . . an imperative" for HUD to abstain from notice and comment where a statute omitted mention of a notice and comment rulemaking requirement, particularly because "HUD's own regulations required HUD to provide notice and an opportunity to comment prior to promulgating any substantive rule." *Yesler*

10

*Terrace Cmty. Council v. Cisneros*, 37 F.3d 442, 448–49 (9th Cir. 1994) (citing 24 C.F.R. § 10.1); *see* Pls.' Mem. at 13.[1] In any event, HUD previously engaged in notice-and-comment rulemaking on the waiver provision when allowing certain PHAs to conduct streamlined versions of the required initial assessments. Voluntary Conversions of Developments from Public Housing Stock, 64 Fed. Reg. 40,240, 40,240 (July 23, 1999) (proposing rule); Required Initial Assessments, 66 Fed. Reg. 33,616 (June 22, 2001) (final rule). Thus, Defendants' contention that Congress' "silence is controlling" can neither be reconciled with its prior approach to implementing § 1437t nor with the weight of case law to the contrary.

None of the cases cited by Defendants supports their contention that the lack of reference to notice and comment rulemaking in § 1437t(b)(3) permits HUD to dispense with its obligations under the APA.[2] *See Brendsel v. Office of Fed. Hous. Enter. Oversight*, 339 F. Supp. 2d 52, 65 (D.D.C. 2004) (rejecting agency's argument that its enabling statute conferred the extraordinary power to freeze assets in an informal proceeding absent an express statutory directive); *Samma v. Dep't of Def.*, 486 F. Supp. 3d 240, 280 (D.D.C. 2020) (declining to read a substantive "time-in-service requirement into a statutory provision where Congress had not expressly authorized one).

---

[1] Defendants' attempts to distinguish other provisions of the United States Housing Act that expressly require the Secretary to prescribe regulations fall flat, as those provisions require the Secretary to supply the substantive standards by which PHAs may approve tenants for public housing or admit applicants with records of past convictions (that would normally disqualify them) into public housing. *See* Defs.' Opp. at 35 (citing 42 U.S.C. §§ 13603(b)(1) and 13661).

[2] Defendants' reliance on two cases in which a statute authorized the Department of Homeland Security Secretary to "waive all legal requirements … necessary to ensure expeditious construction" of border fences and roads misses the mark. Pursuant to the Real ID Act of 2005, the Secretary waived several laws, including the APA itself. *Defs. of Wildlife v. Chertoff*, 527 F. Supp. 2d 119, 122 n.3–4 (D.D.C. 2007); *see also Ctr. for Biological Diversity v. McAleenan*, 404 F. Supp. 3d 218, 245 (D.D.C. 2019). Moreover, the statute only provided for judicial review of constitutional claims. *Defs. of Wildlife*, 527 F. Supp. 2d at 122 n.3. Thus, plaintiffs did not bring, and the courts did not decide, any challenge to the waivers under the APA.

Unlike in *Brendsel*, Plaintiffs do not ask the Court to read any new powers or remedies into the statute. And *Samma* addressed whether an agency's promulgation of a policy that imposed a substantive condition to obtain naturalization was authorized notwithstanding the statute's silence on such a requirement. No such inference from § 1437t(b)(3)'s lack of an express rulemaking requirement can be drawn here as notice and comment rulemaking is a procedural requirement imposed on federal agencies by the APA.

Second, Defendants erroneously contend that the Notice is an adjudication for which notice and comment rulemaking is not required. Defs.' Opp. at 37. The APA defines a rule, in relevant part, as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4). An adjudication (which results in an order) is virtually any agency action that is not rulemaking. 5 U.S.C. § 551(6)–(7). The D.C. Circuit has observed that "most legislative rules are generally applicable" and that "rules generally have only 'future effect' while adjudications immediately bind parties by retroactively applying law to their past actions." *Safari Club Int'l v. Zinke*, 878 F.3d 316, 332, 333 (D.C. Cir. 2017) (citing *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445–46 (1915)).

The Notice has all the hallmarks of a legislative rule. First, it applies prospectively to small PHAs seeking to convert the remainder of their public housing stock, alerting them they are no longer required to submit a conversion assessment. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 221 (1988) (Scalia, J., concurring) (citing *N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759 (1969)) ("[A]djudication could not be purely prospective, since otherwise it would constitute rulemaking.").

12

Second, the Notice amends the existing regulations by removing the required conversion assessment and altering the standard of review for conversion plans. Pls.' Mem. at 14–18; *see Conf. Grp., LLC v. F.C.C.*, 720 F.3d 957, 965 (D.C. Cir. 2013) (noting that one of the "hallmarks of legislative rulemaking . . . [is] amending a prior legislative rule"). Defendants do not refute this.

Third, the Notice makes a generalized determination about the needs of all small PHAs rather than an individualized one concerning specific PHAs, and it applies equally to all PHAs that meet the Notice's eligibility criteria to apply for streamlined voluntary conversions. *See Bi-Metallic Inv. Co.*, 239 U.S. at 445–46; *Safari Club Int'l*, 878 F.3d at 355–56. Thus, HUD "may not escape the requirements of § 553 by labeling its rule an 'adjudication.'" *Safari Club Int'l*, 878 F.3d at 355.

Although Defendants correctly note the number of entities affected is not determinative of the nature of an agency action, *see* Defs.' Opp. at 37, it is nonetheless an important factor in distinguishing rulemakings from adjudications. *Bi-Metallic Inv. Co.*, 239 U.S. at 445–46. Indeed, Defendants' statement that "small housing authorities only owned approximately twenty percent (20%) of the public housing units nationwide," Defs.' Opp. at 38, obscures the fact that small public housing agencies comprise approximately 2,200 of the 3,300 public housing agencies nationwide. Council of Large Public Housing Authorities, *Public Housing Facts: How Much Public Housing Is There?*, https://clpha.org/public-housing/facts. That HUD has only waived the conversion assessment for 36 applications submitted to date under the Notice does not diminish the reality that the Notice applies to a majority of PHAs that may seek voluntary conversions of their housing stock.

13

Although other statutes providing for statutory or regulatory waivers do not expressly require notice and comment for individual waivers, Defendants' reliance on 42 U.S.C. § 3535(q) is misplaced. That statute provides that HUD may waive regulations and merely "notify the public" of such waiver through publication in the Federal Register, but it "grants no authority to waive statutory requirements that may be codified in HUD regulations." Waiver of Regulations Issued by HUD Restatement of Policy, 73 Fed. Reg. 76,674, 76,675 (Dec. 17, 2008); *see* PIH Notice 2021-34 ("As a general matter, HUD does not have the authority to waive statutory requirements."). That the CARES Act may have expressly authorized waivers of certain statutory and regulatory provisions due to the COVID-19 pandemic is likewise inapt because those waivers arose as a result of "unexpected or emergency circumstances," Defs.' Opp. at 37, that did not motivate HUD's promulgation of the 2019 Notice.

## 2.   HUD's Change in Position Was Arbitrary and Capricious.

Defendants do not dispute Plaintiffs' argument that the Notice was arbitrary and capricious because it is an unexplained departure from the agency's position on conversion assessments under § 1437t, as outlined in prior agency notices and statements in the Federal Register. *See* Pls.' Mem. at 19–21. Instead, Defendants argue the 2019 Notice does not represent a change in interpretation of its § 1437t(b)(3) authority, relying solely on PIH Notice 2014-14 (HA) ("2014 Notice"), which waived the cost analysis portion of the conversion assessment in limited circumstances where HUD had already determined the cost of vouchers would not exceed the cost of maintaining public housing, Pls.' Mem. at 20 n.5.

This argument fails because the 2019 Notice *is* a clear departure from the 2014 Notice insofar as the 2014 Notice nevertheless required a conversion assessment. While both the 2014 and 2019 Notices explain why the agency wished to waive the conversion assessment, they do not "display awareness that [the agency] *is* changing position . . . [and] that there are good

14

reasons for the new policy." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515–16 (2009); *Verizon v. F.C.C.*, 740 F.3d 623, 636 (D.C. Cir. 2014) ("[R]easoned decision-making ordinarily demands that an agency acknowledge and explain the reasons for a changed interpretation."). Nowhere in the 2019 Notice does HUD explain or acknowledge its departure from prior interpretations that a conversion assessment is required for all voluntary conversions under 42 U.S.C. § 1437t.

> **C.     Waiver of the Conversion Assessment Is Inconsistent with Defendants' Duty to Affirmatively Further Fair Housing.**

> > **1.     The Notice's Waiver Does Not Accord with Defendants' Duty to Affirmatively Further Fair Housing.**

Plaintiffs argued that Defendants' issuance of the Notice violates their duty to affirmatively further fair housing ("AFFH"). Pls.' Mem. at 26–28. But Defendants' motion is wholly unresponsive to this argument. Defendants argue Section 808 of the FHA, 42 U.S.C. § 3608(e)(5), is not intended as a tool by which to measure HUD's decisions on an individual program basis, but rather requires HUD's actions to be viewed "collectively" to determine whether it meets its duty to AFFH. Defs.' Opp. at 23. Further, Defendants argue that, to the extent courts have interpreted HUD's fair housing duty to the contrary, those authorities should be disregarded in light of HUD's interpretation. Defs.' Opp. at 24.

Defendants' argument concerning the scope of its own duty to AFFH fails because it relies on a proposed rule that principally outlines HUD *program participants'* duties. *See* Proposed Rule on Affirmatively Furthering Fair Housing, 88 Fed. Reg. 8,516, 8,539 (Feb. 9, 2023) ("Proposed Rule") (applying only to "program participants"). Besides lacking the force of law, Defendants' proposed interpretation of their participants' fair housing obligations is immaterial to whether Defendants violated *their* fair housing mandate.

In any event, Defendants' argument that § 3608(e)(5) imposes "a broad mandate to affirmatively further fair housing . . . that generally is not a vehicle for assessing any one Department decision like this approval in isolation," Defs.' Opp. at 23, is incorrect. Contrary to Defendants' contentions, HUD's pronouncement in the Proposed Rule that 42 U.S.C. § 3608(d) and (e) "require more than compliance with the Act's antidiscrimination mandates" directly relies on *Otero v. N.Y.C. Hous. Auth.*, 484 F.2d 1122 (2d Cir. 1973), *Shannon v. HUD*, 436 F.2d 809 (3d Cir. 1970), and *Thompson v. HUD*, 348 F. Supp. 2d 398 (D. Md. 2004), cases Plaintiffs cite in support of their FHA-based APA claims. 88 Fed. Reg. 8,521–22; Pls.' Mem. at 26–27. Indeed, HUD has consistently taken the position that the body of FHA case law upon which Plaintiffs rely informs their obligations to further fair housing in administering its public housing programs. *See, e.g.*, Restoring Affirmatively Furthering Fair Housing Definitions and Certifications, 86 Fed. Reg. 30,779, 30,781 (Jun. 10, 2021) ("Interim Final Rule"); Affirmatively Furthering Fair Housing, 80 Fed. Reg. 42,272, 42,274 (Jul. 16, 2015).

Defendants further admit the FHA does not supply a "precise scope" of this obligation for HUD or its recipients, but in the Proposed Rule, point to case law as "provid[ing] some guidance for this task." Affirmatively Furthering Fair Housing, 88 Fed. Reg. at 8,522. Defendants cannot rely on these precedents to justify their rulemaking while simultaneously claiming the substance of that rulemaking supersedes or contradicts those judicial decisions. If anything, HUD's rule does more to advance Plaintiffs' likelihood of success on the merits than to undercut it. Thus, HUD's fair housing mandate extends to the promulgation of the Notice.

HUD has recognized it "is obligated to 'utilize some institutionalized method whereby . . . it has before it the relevant racial and socio-economic information necessary for compliance with its duties' under the [FHA]." *See* Interim Final Rule, 86 Fed. Reg. 30,779, 30,780 (June 10,

16

2021) (quoting *Shannon*, 436 F.2d at 821). The review involved in the conversion is comparable to the scope of HUD's activities that *Shannon* held were subject to the AFFH duty, 436 F.2d at 811–13, and to the requirements of the Interim Final Rule's definition of AFFH (such as avoiding actions that are "materially inconsistent" with the duty to AFFH), Interim Final Rule, 86 Fed. Reg. at 30,791. For example, Defendants' approval of the Acre Road conversion permits the Housing Authority of Jefferson Parish ("HAJP") to shutter its last remaining public housing development, displacing its residents and enabling HAJP and related local government entities in Jefferson Parish to reconfigure their programs to exclusively administer affordable housing through the HCV program. Defendants' approval of Acre Road's conversion without a meaningful review of factors relevant to assessing the potential adverse discriminatory effects on dislocated residents therefore is precisely the type of action against which HUD's fair housing mandate is designed to protect.

Absent a meaningful review of the alternative housing opportunities available in the private housing market for Acre Road tenants, Defendants cannot credibly assert that a conversion done without the benefit of a conversion assessment is consistent with their AFFH duty. *See* Pls.' Mem. at 26–28. Here, a comparative analysis of the alternative housing available in the local housing market for voucher holders would have been necessary for Defendants to establish that the SVC was consistent with that duty. Significantly, their papers offer no rebuttal to Plaintiffs' evidence that the Acre Road conversion will displace residents into areas in and around Jefferson Parish that are more highly segregated than Acre Road. *See id.* at 28–31. Thus, the Notice establishes an SVC process that is "invidious under the [FHA]." *Boykin v. Gray*, 895 F. Supp. 2d 199, 213 (D.D.C. 2012).

Plaintiffs have demonstrated they are likely to succeed on their claim that the Notice breaches Defendants' FHA obligations and must be set aside under section 706(2)(A) of the APA.

> **2.      Approval of the Conversion Plan's Resulting Segregative Effects and Disparate Treatment Breached Defendants' Obligations Under the Fair Housing Act.**

Plaintiffs argue HUD's decision to approve the Acre Road conversion was arbitrary and capricious because HUD breached its statutory duty under the FHA to meaningfully assess the discriminatory impacts of the conversion. Pls.' Mem. at 28–36. Defendants do not challenge Plaintiffs' contention that the Acre Road conversion will have a disparate impact to Black residents and perpetuate segregation in Jefferson Parish, Louisiana, in direct violation of the FHA. *Compare* Pls.' Mem. at 28–34 *with* Defs.' Opp. at 27–29. Defendants fail to demonstrate the approval of the Acre Road SVC was "necessary to achieve . . . [the] substantial, legitimate, nondiscriminatory interests" of "physical health and safety of the [Acre Road] residents," as they claim. Defs.' Opp. at 28 (quoting 24 C.F.R. § 100.500(b)(i)).

Critically, Defendants' alleged interest in the physical health and safety of the residents "could be served by another practice that has a less discriminatory effect." 24 C.F.R. § 100.500(c)(3). HUD could have enforced existing requirements on HAJP to maintain Acre Road in a safe and habitable condition by remediating the mold. Even if the alleged health and safety risks had not been addressable by remediation, HUD could have required HAJP to provide more explicit and effective mobility and relocation benefits that would have enabled them to secure safe, quality housing. HUD could have required that HAJP employ a repositioning option that included a plan to rebuild and a right for tenants to return to any future housing development. HUD could have required *robust* mobility counseling, sought approval to utilize higher HCV payment standards to make vouchers competitive in higher cost neighborhoods, conducted

intensive outreach to landlords refusing vouchers, and/or provided financial or other incentives for landlords in the private market to rent to displaced tenants with HCVs. *See also* Collins Decl., Ex. C at 9–10.

If HUD had pursued this course of action, the same purported health and safety interests could have been addressed with a "less discriminatory effect." 24 C.F.R. § 100.500(c)(2)–(3); *see also Mhany Mgmt. Inc. v. City of Nassau*, 819 F.3d 581, 617 (2d Cir. 2016). Thus, Plaintiffs have established that Defendants' approval of the conversion plan and its resulting segregative effects and disparate treatment was inconsistent with Defendants' duty to affirmatively further fair housing.

## III.    Plaintiffs Have Established Irreparable Harm.

Plaintiffs established that, without a preliminary injunction, Defendants' approval of the Acre Road SVC places individual plaintiffs at imminent risk of displacement, which in turn undermines MTO's purpose, and advocacy efforts. Pls.' Mem. at 36–39. Defendants do not dispute that Plaintiffs will suffer irreparable injury as a result of their approval of the Acre Road SVC, and instead argue that injury is not imminent because the individual Plaintiffs have not (yet) received notices of eviction. Defs.' Opp. at 15. Defendants' argument wholly ignores MTO's irreparable injuries to its mission and activities. In any event, it is unavailing.

First, numerous courts, including in this District, have found the prospect of future eviction suffices to show imminent, irreparable harm, including where eviction proceedings have not yet begun. *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1159 (9th Cir. 2011) (affirming holding of irreparable harm where subsidized tenants faced risk of eviction because they could not afford market rents); *Brown v. Artery Org., Inc.*, 654 F. Supp. 1106, 1109, 1119 (D.D.C. 1987) (granting preliminary injunctive relief to subsidized tenants who were likely to be displaced from their jobs and schools, including enjoining issuance of

eviction notices and enforcement of existing notices); *see also* Pls.' Mem. at 37–38. Defendants make no attempt to distinguish these cases. The cases on which Defendants do rely are inapposite or address factors not present here to find that the threat of eviction or displacement was diminished sufficiently to deny injunctive relief. *See Moore v. Cap. Realty Grp., Inc.*, 21-CV-1099-LJV, 2022 WL 2352554, at *3 (W.D.N.Y. June 30, 2022) (declining to enjoin a landlord from evicting a tenant who was allegedly materially noncompliant with the terms of his lease); *Oliva v. Brookwood Coram I, LLC*, No. CV 14-cv-2513 (JMA)(AYS), 2015 WL 13745439, at *7–8 (E.D.N.Y. Nov. 30, 2015) (noting tenant had "prevailed in his effort to have the eviction proceeding finally dismissed" and succeeded in staying in his apartment without a lease for two years); *Allen v. N.Y.C. Hous. Auth.*, No. 10 Civ. 168 (CM) (DCF), 2010 WL 1644956, at *4 (S.D.N.Y. Apr. 20, 2010) (observing tenant was offered an additional hearing by the agency before eviction proceedings would begin).[3]

    Eviction is no mere possibility for the Acre Road tenants. It is inevitable, and Defendants' approval of the Acre Road SVC authorizes HAJP to immediately issue notices to vacate. Hornstein Decl. (ECF 20-1) ¶ 3; *id.* Ex. B (ECF 20-3), at 4. Moreover, Defendants have conceded they have no control over when notices issue (absent rescission of their SVC approval). *See* Hornstein Decl. ¶ 32 (acknowledging HUD "does not have the right to control the

---

[3] Indeed, if Plaintiffs could only establish imminent injury upon HAJP's commencement of eviction proceedings against them, *Younger* abstention may preclude this Court from providing relief to Plaintiffs. *Younger v. Harris*, 401 U.S. 37, 45 (1971) (holding that federal courts may not ordinarily "enjoin pending proceedings in state courts."); *see Toth v. Wells Fargo Bank, N.A.*, 82 F. Supp. 3d 373, 377 n.2 (D.D.C. 2015) (applying *Younger* and refusing to enjoin state court eviction proceedings); *Amiri v. Gelman Mgmt. Co.*, No. CV 08-1864 (JDB), 2010 WL 11575469, at *1 (D.D.C. Feb. 18, 2010) (refusing under *Younger* and *Rooker-Feldman* to stay execution of an eviction order by the D.C. Superior Court).

Housing Authority's decisions about whether or when to issue eviction notices."). Accordingly, Plaintiffs' injuries are imminent.

## IV.     The Balance of Equities and Public Interest Favor Entry of a Preliminary Injunction.

In their opening papers, Plaintiffs argued the balance of equities and the public interest weigh in favor of granting a preliminary injunction because the harm caused to Plaintiffs— forced displacement and increased risk of homelessness—and outweigh any harm to Defendants. Defendants counter that a preliminary injunction "would immediately harm the community by exacerbating the current dangerous state of Acre Road," "may prevent the Department from approving conversion plans without streamlined conversion assessments," and "add[] to the administrative burdens" on housing authorities. Defs.' Opp. at 43–44. Defendants' arguments fail for several reasons.

First, halting the conversion would not cause harm to Acre Road's residents, notwithstanding Defendants' paternalistic assertions otherwise. *See id.* at 3. As Defendants acknowledge, any Acre Road resident who wishes to voluntarily relocate has been able to do so since July 2021 pursuant to separately-authorized HCVs available to residents. *Id.* at 9; Hornstein Decl. ¶ 3, Ex. B at 3. Plaintiffs do not ask the Court to enjoin these voluntary moves. *See* Proposed Order Granting Preliminary Injunction (ECF 3-8).

Second, Defendants provide no support for their claim that providing tenants with HCVs will somehow allow them to avoid flood-prone areas, mold, proximity to a sewage plant, and crime. Defs.' Opp. at 43. The HCV program is subject to HUD-enumerated Housing Quality Standards ("HQS"), which do not address mold or noxious odors. *See* 24 C.F.R. § 982.401(b)– (n). Further, HQS inspectors are not required to conduct any testing. Hornstein Decl. ¶ 4. Thus,

nothing protects a tenant with an HCV from moving into a home equally impacted by mold or noxious odors.

Nor do HCV regulations prevent tenants from renting a home in an area prone to "continual flooding . . . caused by seasonable storms," *Id.* ¶ 4, or in a high-crime area.  As this Court has previously acknowledged, in jurisdictions without available affordable housing for voucher-holders, the likelihood of being forced into such substandard housing conditions is high. *Brown*, 654 F. Supp. at 1118. Indeed, in their searches for a new home, individual Plaintiffs have encountered the same harms from which Defendants allege they will be saved as a result of the Acre Road conversion. *See* Anderson Decl. ¶ 16 (some units had "maintenance issues similar to those that exist at Acre Road."); Johnson Decl. ¶ 10 ("[t]he only places . . . accepting vouchers were in worse condition than Acre Road"); James Decl. ¶ 18 ("new neighborhood . . . is very dangerous and there are frequent shootings in the area").

Third, Plaintiffs' interests in maintaining stable housing and avoiding homelessness significantly outweigh any hindrance to agency action that Defendants fear will occur if a preliminary injunction is entered. Defendants assert that an injunction "would harm other federal agencies … by calling into question their own statutory rights to exercise waiver authority without undergoing regulatory rulemaking." Defs.' Opp. 44–45. These concerns are overstated. As provided in Section I, whether HUD has a statutory right to waive the conversion assessment is at the heart of Plaintiffs' claims. A preliminary injunction would preserve the status quo with respect to the Acre Road SVC while that question is litigated.  Granting a preliminary injunction would not preclude small PHAs from submitting conversion plans pursuant to § 1437t and its implementing regulations or bar HUD from authorizing HCVs for health and safety reasons, much as it did for Acre Road residents in July 2021. The public interest is served by ensuring

HUD complies with its obligations under the APA, its own regulations, and the FHA. *See Gulf Coast Mar. Supply, Inc. v. United States,* 218 F. Supp. 3d 92, 101 (D.D.C. 2016) (observing that the "public interest is served . . . by ensuring that government agencies conform to the requirements of the APA and their own regulations"), *aff'd*, 867 F.3d 123 (D.C. Cir. 2017).

The balance of equities and public interest weigh in favor of enjoining Defendants from taking steps to enforce or implement the approved SVC.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for a preliminary injunction and enjoin Defendants from approving SVC plans pursuant to the process outlined in the Notice and from taking action to implement the Acre Road conversion.[4]

Respectfully submitted this 16th day of June, 2023.

/s/ Jehan A. Patterson
**DEBEVOISE & PLIMPTON LLP**
Jehan A. Patterson (D.C. Bar No. 1012119)
Caroline Grueskin (D.C. Bar No. 90006625)
801 Pennsylvania Avenue N.W., Suite 500
Washington, D.C. 20004
Telephone: (202) 383-8000
Facsimile: (212) 383-8118
Email: jpatterson@debevoise.com
          cgrueskin@debevoise.com

Anu Chugh (N.Y. Bar No. 6023667 - AD3) (*pro hac vice*)
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: achugh@debevoise.com

---

[4] Plaintiffs gratefully acknowledge the efforts and contributions of Valerie Zuckerman, associate at Debevoise & Plimpton LLP, and Sophia Jayanty, counsel at Lawyers' Committee for Civil Rights Under Law. Plaintiffs are also grateful to John Sullivan Baker, summer associate at Debevoise & Plimpton LLP, for his research and drafting assistance on the reply memorandum.

23

**LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW**
Thomas Silverstein (D.C. Bar No. 1552406)
Anneke Dunbar-Gronke (D.C. Bar No. 90008670)
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857
Email: tsilverstein@lawyerscommittee.org
         adunbar-gronke@lawyerscommittee.org

**SOUTHEAST LOUISIANA LEGAL
SERVICES**
Hannah Adams (L.A. Bar No. 36343) (*pro hac vice*)
1340 Poydras St, #600
New Orleans, LA 70112
Telephone: (504) 529-1000 x. 258
Facsimile: (504) 596-2241
Email: hadams@slls.org

24

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2023, a copy of the foregoing Reply Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction was filed electronically. Notice of this filing will be sent by operation of the Court's CM/ECF filing system to all parties indicated on the electronic filing receipt.

/s/ Jehan A. Patterson
Jehan A. Patterson (D.C. Bar No. 1012119)
801 Pennsylvania Avenue N.W., Suite 500
Washington, D.C. 20004
Telephone: (202) 383-8000
Facsimile: (212) 383-8118
Email: jpatterson@debevoise.com

25